IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:19CR188 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) | |
| | ) | |
| EDDIE P. GONZALEZ, JR., | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by its counsel, Justin E. Herdman, United States Attorney, and Carol M. Skutnik, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant Eddie P. Gonzalez, Jr. ("Gonzalez"). For the reasons set forth below and those to be articulated at the sentencing hearing, the United States submits that a sentence within the applicable Guidelines range is appropriate in this case.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Carol M. Skutnik
Carol M. Skutnik (OH: 0059704)
Assistant U.S. Attorney
Suite 400, U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113–1852
Tel. No. (216) 622-3785
E-mail: carol.skutnik@usdoj.gov

I. **FACTUAL BACKGROUND**

To support its sentencing position, the United States offers the following summary of Defendant Gonzalez's conduct. The United States also refers the Court to the description included in the Presentence Investigation Report ("PSR"). (R. 16: PSR, PageID 63-83).

A. OHIO BUREAU OF CRIMINAL INVESTIGATION ("BCI") IDENTIFIES GONZALEZ

Ohio BCI identified an individual (hereafter "Rosynek"[1]) possibly involved in the distribution and trading of child pornography. While reviewing evidence collected during the case against Rosynek, agents discovered that an individual known to Rosynek as "lilchico9286" both sent and received images of child pornography via KIK[2] and Dropbox[3]. Ohio BCI

---

[1] Joseph J. Rosynek was indicted in the Northern District of Ohio on March 27, 2019, in Case No. 4:19CR193. He was charged with the Sexual Exploitation of Children, in violation of 18 U.S.C. §2251(a), Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. §2252(a)(2), and Possession of Child Pornography, in violation of 18 U.S.C. §2252A(a)(5)(B). He pleaded guilty to receipt, distribution, and possession of child pornography with a Plea Agreement that cross-referenced to the Sexual Exploitation of Children (Production) Guidelines and stipulated that his sentencing range was 168-210. Despite this agreement, Rosynek was sentenced to 108 months based upon the national average for child pornography offenders.

[2] KIK is a proprietary instant messenger software application (app) for mobile devices. It uses a smartphone's data plan or Wi-Fi to transmit and receive messages, photos, videos, sketches, mobile webpages, and other content. KIK may also be accessed via laptop and desktop computers by downloading an Android emulator software application to these devices, such as Bluestacks or Andyroid. KIK is known for its features preserving users' anonymity, such as allowing users to register without providing a telephone number, and preventing users from being located on the service (including by the company itself) through any information other than their chosen username. The app offers registered users the ability to initiate group chat, create KIK chat rooms, or to search for and join established KIK groups according to their interests.

[3] "Dropbox" is a file hosting service operated by Dropbox, Inc., headquartered in San Francisco, California, that offers cloud storage, file synchronization, personal cloud, and client software. Dropbox Inc. allows users to create a special folder on each of their computers, which Dropbox Inc. then synchronizes so that it appears to be the same folder (with the same contents) regardless of which computer is used to view it. Files placed in this folder also are accessible through a

determined that "lilchico9286" sent Rosynek a Dropbox link that led to a webpage displaying several hundred images of male child pornography, while Rosynek in turn sent "lilchico9286" approximately eight to ten actual images.  Special Agents soon identified "lilchico9286" as Gonzalez and used undercover computer equipment to access the actual Dropbox link that Rosynek received from him.  The Agents found the link still to be active and that it contained approximately 1600 photograph and video files depicting child-related pornography.

> 1. <u>Dropbox File System Layout for the account associated with the link provided to Rosynek by Gonzalez.</u>

Ohio BCI reviewed the search warrant results provided by Dropbox, Inc. for the URL associated to child pornography shared via the KIK app from "https://www.dropbox.com/sh/█████████████████████████████████████████", which is the link that Gonzalez sent to Rosynek.  Below is the Dropbox File System Layout for the account:

> File folder "**descargas**" - contained 1,851 images and videos of mostly male child pornography and minors in underwear;
>
> File folder "**Stuff**" - contained 11 videos of teen boys masturbating or engaged in sex;
>
> File folder "**The pics**" - contained 66 images and videos of teen boys masturbating or engaged in sex.
>
> Five additional file folders were also present:
>
> 1. File folder "**Hot Sets**" - contained 4 images of nude teen males and a file folder named "**Hot Sets 2**" which contained 5 pictures of male genitalia and a file folder named "**Hot Sets 3**" which contained 5 pictures of male genitalia;

---

website and mobile phone applications.  Each Dropbox user is afforded 2GB of free storage space that may be used to save photographs, videos, documents, and e-mail messages.

2. File folder "**Hot Vids**" - contained 24 videos of male teens engaged in masturbation or sex;

3. File folder "**Hotties**" - contained 452 images of nude male teens;

4. File folder "**More Stuff**" - contained 29 images and videos of nude male teens;

5. File folder "**Wrestler**" - contained 3 videos of what appeared to be a teen male in a high school wrestling uniform who engages in masturbation and fondling himself for the camera.

2. <u>Dropbox File System Layout for the account associated with Gonzalez's personal email account.</u>

Ohio BCI reviewed the search warrant results provided by Dropbox, Inc. for the account associated to Gonzalez's personal email account, "lilchico9286@gmail.com." Below is the Dropbox File System Layout for his personal account:

1. Dropbox → "**14 videos copied on February 27, 2018**" → contains 11 videos (3 will not play) of child pornography that depict male teenagers engaged in various sexual acts such as masturbation, oral and anal sex, as well as one video of nude juvenile males at a public sauna;

2. Dropbox → "**boys**" → contains 202 videos of child pornography depicting prepubescent males ranging from infant/toddler age to teens that are engaged in sexual acts such as masturbation, oral and anal sex and displaying their genitalia;

3. Dropbox → "**Trade112**" → contains 44 videos of child pornography depicting prepubescent males ranging from infant/toddler age to teens that are engaged in sexual acts such as masturbation, oral and anal sex and displaying their genitalia.

Two subfolders, listed below, were also in this folder.

Dropbox → "**Trade112**" → "**Trade**" → contains 4 videos of child pornography depicting prepubescent male juveniles engaged in sex acts such as masturbation, oral and anal sex;

Dropbox → "**Trade112**" → "**Trade111**" → contains 5 videos of child pornography depicting prepubescent males ranging from infant/toddler age to teens that are engaged in sexual acts such as masturbation, oral and anal sex and displaying their genitalia.

    B.    <u>THE SEARCH WARRANT</u>

On November 6, 2018, Special Agents from the Ohio BCI, the Federal Bureau of Investigation, the Mahoning Valley Violent Crimes Task force, and officers from the Campbell Police Department executed a federal search warrant pertaining to Gonzalez's possession and dissemination of child pornography at his home on Jackson Street. Gonzalez was present and was interviewed.

When told the reason for the search warrant, Gonzalez stated that he simply "was in a chat room that talked about [child pornography]" and that it was "just a fetish" and that he "never shared anything." When reminded of the reason for the execution of the search warrant, Gonzalez said that he frequented public "taboo chats" on KIK where others shared "stories" involving "father-son fetishes" and that he simply enjoyed reading and interacting with them. He later admitted to receiving pictures and videos from other users via Dropbox links that contained child pornography. He then would "copy and paste" those links and send them to other users so they would interact with him. He described that link as containing "a bunch of taboo links" that contain "actual porn of age," "father-son incest" and "underage," which he said had prepubescent images and videos of mostly juvenile males. Gonzalez estimated that he viewed a "couple hundred" child pornography images and videos and that he shared the Dropbox link approximately 20 times. Although he stated several times that he regularly used the images, videos and stories to masturbate, he also stated that he kept his fetishes a secret because he "felt ashamed."

C. FORENSIC ANALYSIS OF THE SAMSUNG SM-G955U

A forensic analysis of Gonzalez's Samsung phone located a KIK folder containing two files:

File "**KIK-Pictures.html**" containing picture files from the KIK app; and

File "**KIK-Videos.html**" containing video files from the KIK app.

A third file, "**Chat Conversation with 330-299-▮▮▮▮.html**," contains chat messages to and from 330-299-▮▮▮▮. Within these conversations, the KIK username "lilchico9286" is identified as being associated with the user of the phone.

Another file, "**Chat Message to 234-249-▮▮▮▮.html**," contains chat messages to 234-249-▮▮▮▮ wherein the user of the phone offers to pay to perform sexual acts.

D. THE POLYGRAPH EXAMINATION

Gonzalez agreed to participate in a polygraph examination. The polygraph process begins with written consent to participate in the polygraph exam. It then involves a pre-test interview, the polygraph questions, and a post-test interview.

During Gonzalez's initial law enforcement interview, he admitted to receiving, possessing, and trading child pornography while engaging in sexually oriented conversations on KIK. Gonzalez stated that he is gay and is sexually attracted to male minors and male adults. He denied ever having any type of sexual contact with any minors or involving any minors in any sexual activity. He told agents that he used his KIK account on Grindr in years past. During those "hook ups" he said that he suspected some of the males that he met were under the age of 18, yet he did not check identification prior to having sex with them. He did not know the names or even physical descriptions of those individuals, as he said they would only meet once and never speak again.

6

During the pre-test interview, Gonzalez stated that he is sexually attracted to minor males who are 17 years old or younger. Gonzalez said that he regularly engages in sexual "hook-ups" generated from Craigslist or Grinder. Gonzalez explained that he enjoys these hook-ups because he likes the sex, the anonymity, and the risk. Pre-test, Gonzalez stated that all these hook-ups have been with adult males except for one single encounter with a minor male when he was 25 years old, and had a hook-up with a male minor who was either 16 or 17 years old. He could not provide any other information except that this hook-up occurred with a white minor male in Youngstown inside the minor's vehicle. Gonzales stated for all of his hook-ups, he doesn't ask for their names, nor does he request to look at their driver's license to check their age; however, he knew this male was either 16 or 17 years old. Gonzales stated that this is the only time he has ever had any sexual contact with a minor.

Special Agent Fragomeli of the Federal Bureau of Investigation then provided a polygraph examination pertaining to Gonzalez's sexual contact with minors. The results were recorded as "DI" (Deception Indicated).

During the post-test interview, Gonzalez provided information concerning his responses to the examination. Gonzalez estimated that he has had hook-ups with approximately 20 minor males who were either 16 or 17 years old. Gonzales again stated that he does not check driver's licenses, but that he knew these hook-ups were with minors. Gonzales stated that all of his hook-ups with male minors were consensual and that he could not identify any of these minors.

## II. APPLICABLE LEGAL STANDARDS

### A. LEGAL PRECEDENT FOR GUIDELINE SENTENCE

The United States' request for a guideline sentence in this case is consistent with the law and research highlighting the danger posed by child pornography offenders. Numerous courts

have emphatically expressed the wretched consequences of child pornography.  In United States v. Goff, 501 F.3d 250, 259 (3rd Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography.  These small victims may rank as anyone else in [defendant]'s mind, but they do indeed exist outside his mind.  Their injuries and the taking of their innocence are far too real.  There is nothing casual or theoretical about the scars they will bear from being abused for [defendant]'s advantage.

The defendant in United States v. MacEwan, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to downplay his receipt of child pornography by claiming that he was not a violent offender or a trafficker of guns or drugs.  The Third Circuit was not persuaded, reasoning as follows:

> Congress found that where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.  Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.  Furthermore, it inflames the desires of . . . pedophiles . . .  who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

Id. (citations omitted); see also United States v. Duhon, 440 F.3d 711, 718-20 (5th Cir. 2006); United States v. Yuknavich, 419 F.3d 1302, 1310 (11th Cir. 2005); United States v. Grosenheider, 200 F.3d 321, 332-34 (5th Cir. 2000).

The Court in United States v. Cunningham, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), affirmed 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child pornography defendant.  In denying the defendant's challenge to the legitimacy of the child pornography guideline, the same one that applies to Gonzalez, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children.  Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.

Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

In United States v. Norris, 159 F.3d 926, 929-30 (5th Cir. 1998), cert. denied, 526 U.S. 1010 (1999), the defendant claimed that children depicted in child pornography are not victimized by receipt. Rather, the defendant claimed that the victimization occurred solely when the child pornography was produced. Id. The Fifth Circuit thoroughly repudiated that argument as follows:

> Norris takes an unrealistically narrow view of the scope of harms experienced by the child victims of the child pornography industry. Unfortunately, the victimization of the children involved does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in these materials to suffer as a result of his actions in at least three ways.
>
> *First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. [T]he materials produced are a permanent record of the children's participation and *the harm to the child is exacerbated by their circulation*. . . . The consumer who merely or passively receives or possesses child pornography directly contributes to this continuing victimization.
>
> *Second*, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent . . . The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.
>
> *Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. As Congress put it in explicit factual findings:
>
>> [T]he existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles and child

> pornographers, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.
>
> Plainly, Congress has described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry. The underlying point, however, is that there is no sense in distinguishing, as Norris has done, between the producers and consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

Norris, 159 F.3d at 929-30 (emphasis in original) (citations omitted).

**III.     APPLICATION OF § 3553(A) FACTORS**

    **A.     NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The Government refers to the Statement of Facts section herein and Defendant's PSR for descriptions of the nature and circumstances of the offenses in the case at bar.

    **B.     HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Gonzalez's mother raised him by herself until he was six or seven years old when his father returned to the household. Gonzalez's father no longer used heroin, but continued to become violent when abusing alcohol. Gonzalez denied any personal abuse by his father, but stated that he witnessed the abuse of his mother and sister.

Gonzalez reports that he fantasizes about being molested and that he envisions himself as a child during these fantasies. Despite his preoccupation with being a child victim molested by an adult male, he denies ever experiencing any sexual abuse throughout his life.

Gonzalez appears to be well-educated, graduating from Campbell Memorial High School in Campbell, Ohio, and receiving an associate degree in massage therapy from the Ohio College

of Massotherapy in Akron, Ohio, and he has maintained consistent employment since his graduation from high school until his arrest in the instant case.

      C.      NEED FOR THE SENTENCE IMPOSED TO REFLECT SERIOUSNESS OF OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT

Gonzalez amassed, sought out, and shared with others a collection of child pornography that would make most observers vomit from its content.  In Bistline, the Sixth Circuit noted a reasonable sentence must reflect the seriousness of the offense or provide for any general or specific deterrence.  See United States v. Bistline, 665 F.3d 767-68 (6th Cir. 2012).  A sentence at or near the mandatory minimum would offend the seriousness of the offense and the impact on its victims.  Congress has plainly indicated "[e]very instance of viewing images of child pornography represents a . . . repetition of their abuse."  18 U.S.C. § 2251 (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub. L. No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).  The words of Congress and many courts echo the victims themselves.  For many victims, the downloading of images is just as traumatic as the initial act of abuse.  These victims express embarrassment of being depicted in these extremely vulnerable situations.  They also express fear of being watched and subsequently recognized by people like Gonzalez who fixate on videos and images of them.

In addition to committing digital child exploitation offenses in the comfort and privacy of his own home, he actively sought out face-to-face "hook-ups" with males (sometimes minors) where he would leave his home to have sex with them wherever he could meet them, admittedly at least once in the victim's car.  Although Gonzalez claims only to have had consensual sex with 16 and 17 year-old males, it should be noted that a good portion of the pornography that he

collected was of minors "who had not attained the of 12," some of which even "portrayed sadistic or masochistic conduct or the sexual abuse . . . of a toddler." (R. 16: PSR, PageID 70).

        D.       NEED FOR SENTENCE TO AFFORD ADEQUATE DETERRENCE

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. United States v. Irey, 612 F.3d 1160, 1206 (citing New York v. Ferber, 458 U.S. 747, 760 (1982)) (The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product); Osbourne v. Ohio, 495 U.S. 103, 109-10 (1990) (It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand); United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007) (Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006) (The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it. Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children.). In United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), the court opined:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded, consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

In fact, the Bistline Court reversed a district court that failed to see any importance in general deterrence. See Bistline, at 767. The district court stated, "general deterrence . . . will have little [if] anything to do with this particular case." Id. The Sixth Circuit found "that [the district court's] statement is inexplicable, and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'" Id. (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

Despite the fact that Gonzalez and others who have an overwhelming interest in the sexual assault of young children may not be deterred even if the sentence for the crimes was life, it is also true that others would certainly not be deterred if Gonzalez received a low sentence. These offenders do talk to each other via the Internet and they are concerned enough about law enforcement that they encrypt their hard drives, seek foreign websites, and use anonymous phone apps in an effort to prevent detection. There is much to be gained by a significant sentence—increased safety for our children.

## IV. MONETARY PENALTIES

### A. FINE

The Government concedes Gonzalez does not have the current ability to pay a fine in this matter and suggests that an analysis of Gonzalez's future ability to make money should be directed toward his special assessment.

### B. 18 U.S.C. § 3014 ADDITIONAL SPECIAL ASSESSMENT

Gonzalez is also subject to a mandatory $5,000 Additional Special Assessment under 18 U.S.C. § 3014. The statute states, in pertinent part:

> Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 30, 2019, in addition to the assessment imposed under section 3013, **the court**

> **shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under**—
>
> **(1)** chapter 77 (relating to peonage, slavery, and trafficking in persons);
>
> **(2)** chapter 109A (relating to sexual abuse);
>
> **(3) chapter 110 (relating to sexual exploitation and other abuse of children);**
>
> **(4)** chapter 117 (relating to transportation for illegal sexual activity and related crimes)....
>
> 18 U.S.C. § 3014(a) (emphasis added).

These assessments are deposited in the Domestic Trafficking Victims' Fund and awarded as grants or enhanced programming for victims. 18 U.S.C. §§ 3014(c) and (e)(1). Because Defendant has been convicted of an offense under Chapter 110, the Court must impose this additional special assessment unless it finds he is unable to pay; however, both Defendant's current and future financial status is to be evaluated when making the indigency determination under § 3014. See United States v. Shepherd, 922 F.3d 753 (6th Cir. 2019). See also United States v. Janatsch, 722 F. App'x 806, 810-11 (10th Cir. 2018). That is, negative net worth at the time of sentencing is not dispositive of the issue. United States v. Kelley, 861 F.3d 790, 801-802 (8th Cir. 2017). If "at some point" a defendant would be able to pay the Additional Special Assessment, "[t]his ability to earn money in the future preclude[s] a finding of indigence for purposes of § 3014." Id.

This is consistent with a similar finding by another judge in this District on August 20, 2018, in United States v. Phillip Carl, case number 3:17CR159, in which the defendant was represented by a Federal Defender's Office due to a finding of indigency. The Court, relying on the PSR, found a present inability to pay, but found Carl was part-owner of property and also young enough that work following release was likely. See also, United States v. Lail, 2018 WL

14

2771112 (4th Cir. 2018) (imposition of the $5,000 assessment warranted based on future ability to pay following sale of defendant's house even though indigent at sentencing, represented by the Federal Defender, and unable presently to pay); United States v. Rodgers, 711 F. App'x 229, 230 (5th Cir. 2018) (citing United States v. Magnuson, 307 F.3d 333, 335 (5th Cir. 2002) ($5,000 assessment warranted where defendant had title to certain assets and potential employability sufficient to pay even though PSR found present inability to pay). As the Tenth Circuit noted, "nothing in the statute precludes an examination of future ability to pay as part of a holistic assessment of the indigency determination." United States v. Janatsch, 722 F. App'x 806, 810-11 (10th Cir. 2018). On the contrary, as the Court in that case noted, "[the defendant]'s going to have plenty of time to pay that off while incarcerated." Id.

That is precisely the case here. Even in the absence of assets, Gonzalez will be in prison for at least the next 5 years, much longer if a Guideline sentence is imposed, and during that time, he can participate in the IFRP, which affords him the future ability to pay both the fine and additional special assessment. In fact, the fine will not expire for 20 years from the date of his release from custody. 18 U.S.C. § 3613(b). In addition, he demonstrates future potential employability, both in the institution and beyond, with which to make payments and consequently, Gonzalez should be ordered to pay the $5,000 additional special assessment.

## V.     CONCLUSION

For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that the Court impose a term of imprisonment within the applicable Guidelines range of 210 to 262 months.

                                                            Respectfully submitted,

        JUSTIN E. HERDMAN
        Acting United States Attorney

By: /s/ Carol M. Skutnik
   Carol M. Skutnik (OH: 0059704)
   Assistant U.S. Attorney
   801 West Superior Avenue, Suite 400
   Cleveland, Ohio 44113
   Tel. No. (216) 622-3785
   E-mail: carol.skutnik@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on December 12, 2019, copy of the foregoing Government's Sentencing Memorandum was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Carol M. Skutnik
Assistant U.S. Attorney